IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JERRY L. GENTRY                                                    PLAINTIFF

v.                              Civil No. 1:23-cv-01095-SGS

GEAN SEIGER[1]; LEROY MARTIN;
and JERRY MANESS                                                  DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This is a civil rights action filed *pro* se by Plaintiff, Jerry L. Gentry, under 42 U.S.C. § 1983.  The parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF No. 31.)  Currently before the Court is Defendants' second Motion for Summary Judgment.  (ECF Nos. 54-56.)  Plaintiff filed a response in opposition. (ECF No. 64.)  Defendants submitted a reply.  (ECF No. 66.)  For the reasons explained below, the Court grants Defendants' motion in part and denies it in part.

### I.    PROCEDURAL BACKGROUND

Plaintiff names Defendants Gean Seiger, Jail Administrator of the Columbia County Detention Center ("CCDC"); Tommy Rodgers[2], Jailer at the CCDC; LeRoy Martin, Sheriff of Columbia County; and Jerry Maness, Chief Deputy of the CDCC in his Complaint.  (ECF No. 2.)

---

[1] The Clerk of the Court is directed to correct Defendant Gean Seiger's name in the case heading on the docket as it is misspelled.  According to her Affidavit, her name is spelled Seiger.  (ECF No. 42-2.)

[2] Defendant Rodgers was dismissed from this action in Judge Barry Bryant's February 27, 2025 Summary Judgment Order.  (ECF No. 53.)  He is referenced in this order solely to explain the incidents which led to Plaintiff's complaint regarding failure to provide medical care.

Plaintiff alleges his claims against each of these Defendants in both their individual and official capacities.  *Id*.

Plaintiff's Complaint raised two claims: (1) excessive force and (2) denial of medical care. (ECF No. 2.)  The Court previously dismissed with prejudice the excessive force claim and dismissed Defendant Rogers from the case.  (ECF 53.)

Defendants then filed a second Motion for Summary Judgment for Plaintiff's sole remaining claim of denial of medical treatment.  (ECF No. 54-56.)  In their motion, the Defendants argue: (1) Plaintiff has failed to state a prima facie case of deliberate indifference against any of the Defendants; (2) Defendants were not personally involved in any action of deliberate indifference (3) Plaintiff has failed to state an official capacity claim against any Defendant; and (4) Defendants are entitled to qualified immunity against Plaintiff's claims of denial of medical care.  *Id.*

Defendants attached the following documents as summary judgment evidence in support of their Motion: (1) Affidavit of Gean Seiger; (2) Affidavit of Tommy Rodgers; (3) Plaintiff's August 1, 2023 Medical Intake Form from the CCDC; (4) August 16, 2023 Medical Grievance from the CCDC; (5) Seiger's August 21, 2023 Response to Medical Grievance; (6) Seiger's August 22, 2023 Response to Medical Grievance; (7) August 29, 2023 Inmate Notes; (8) Seiger's August 31, 2023 Response to Medical Grievance; (9) September 2, 2023 Inmate Notes; (10) Seiger's September 3, 2023 Response to Medical Grievance; (11) Seiger's September 15, 2023 Response to Medical Grievance; (12) Seiger's September 19, 2023 Response to Medical Grievance; (13) October 12, 2023 Response to Medical Grievance; and (14) November 9, 2023 Medical Grievance and Seiger's Response.  (ECF Nos. 54-2 – 54-12.)  Notably, the Defendants' summary judgment record does not contain Plaintiff's medical records from his incarceration at the CCDC.

2

Plaintiff responded in opposition to Defendants' Motion for Summary Judgment. (ECF No. 64.) Much of Plaintiff's response focuses on arguments related to discovery in this case. As to the issue of whether he was denied medical care, Plaintiff states: (1) Plaintiff first claims he experienced serious chest pain and neck pain; (2) that other inmates began beating on the window to call for help; (3) that a nonparty and Officer Rodgers responded; (4) that the nonparty officer attempted to move him but ultimately threw him in a chair and left him unconsciousness; and (5) after he did not regain consciousness "they" played doctor on Plaintiff. (ECF No. 64, pp. 11-14.) Plaintiff does not allege any facts related to Defendants Seiger, Maness, or Martin in his Response, nor does he object to any facts alleged by these same Defendants in their second Motion for Summary Judgment in his Response. (ECF No. 64.) Primarily, Plaintiff focuses his arguments on actions taken or not taken by nonparty Officer Josh, and by previously dismissed Defendant, Tommy Rodgers. *Id.*

Plaintiff included several attachments with his response: (1) a charted note from nonparty Aaliyah Rose on 11/02/2023, regarding the August 15, 2023 incident; (2) photos from the security camera video footage from the August 15, 2023 incident; (3) the affidavits of Defendants Seiger and Officer Rodgers; and (4) Inmate Incident Lists from nonparty Stephanie Ingle dated September 2, 2023, and Aaliyah Rose dated November 2, 2023. (ECF No. 64, pp. 3; 6-10; 15-16; 17-19; 20; 21-22.) Again, the Court finds it notable no medical records were produced on this summary judgment record.

In Defendants' reply, they argue: (1) Plaintiff failed to meet his burden of meeting proof with proof; (2) Plaintiff failed to respond to Defendants' Statement of Facts as required by Federal Rules of Civil Procedure; (3) there is no evidence of deliberate indifference by any Defendant;

3

(4) Plaintiff failed to produce any verifying medical evidence into the record or establish an injury in fact.  (ECF No. 66.)

## II.    FACTUAL BACKGROUND

As an initial matter, the Court notes Defendants argument in their Reply that Plaintiff failed to respond to their Statement of Facts in compliance with Federal Rule of Civil Procedure 56 and failed to "meet proof with proof."  (ECF No. 66.)  The Court will, for purposes of its summary judgment analysis, consider the facts alleged by Plaintiff in his verified Complaint.  A verified complaint is the equivalent of an affidavit for summary judgment purposes.  *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).  As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion." *Id*.

This is especially applicable to the current summary judgment record given the absences of medical record evidence.  Plaintiff's verified statements in his Complaint that he was denied medical care are more than sufficient to dispute Defendants' verified affidavits when no medical record evidence was presented to support Defendants' second Motion for Summary Judgment Motion.  As the Court explains below, it would be inappropriate for the Court to grant summary judgment based on the current record when the only evidence available is competing verified statements and jail grievances with conflicting statements contained within.

Plaintiff claims he was denied medical care on August 7, 2023.  Specifically, Plaintiff states in his Complaint:

> On 8-07-23 I was push down from behind, that cause bodily harm to me twisted ankle, fracture collarbone, catching Dizzy spell all the time, and chest pain. the Jailer Tommy

> Rogers told the Sheriff, Chief Deputy and the Jail Administration of what had happen, they all came to talk to me I explain to them of what Had taking place, they look and said yes I do see swellen, but I was still denied medical attention.

(ECF No. 2, p. 4 (errors in original).)

Plaintiff then complains of another incident on a separate day without providing the date:

> I got up one morning and stood up and that all I remember, I past out, Jailer T. Rogers and Josh came in and took me out of the Pod 2 I couldn't gain conscious, they put smelling salt under my nose as I was told by Jailer, but never came to, Mrs. Gean Seiger had some type of object and put it in my chest and start grinning real hard for about 1 ½ minute. When I came to, my chest felt like it had been crush, Mrs. Gean Seiger is No Doctor and she doesn't have no medical Degree in this type of work. She could have kill me without her knowing, my chest was hurting so bad I call Mrs. Gean to the Door and told her of whats was going on and her replied was I'm so tired of you and walk off and slammed the door in front of the Hold Pod 1. I fear for my safety here at this jail.

(ECF No. 2, p. 4 (errors in original).)

Plaintiff attached several documents to his Complaint, which are labeled as incident reports and affidavits regarding the two incidents described above with Defendant Rodgers and Defendant Seiger. (ECF No. 2.) The documents are handwritten presumably by Plaintiff. (ECF No. 2, pp. 6-13.) In these documents, Plaintiff mostly restates the claims he made in his Complaint with a few additional facts the Court finds helpful in understanding Plaintiff's claims.

Plaintiff indicates the chest rubbing incident occurred on August 25, 2023. (ECF No. 2.) Plaintiff also adds that Defendant Rodgers and an unnamed officer took his blood pressure before he passed out on this day, and that his blood pressure was 170/147. *Id.* Finally, Plaintiff alleges he has experienced chest pains every day since the August 25, 2023 incident with high blood pressure and trouble breathing. *Id.* Despite these symptoms, Plaintiff claims he was still denied medical care. *Id.* Plaintiff specifically provides the following facts regarding his injuries or ailments:

5

> They took me and sit me down and took my Blood presure and it was 170 over 147, that stroke level, but I was never taken to the Hospital instead they put smelling salt under my nose but I never came to.

(ECF No. 2, p. 8 (errors in original).)

> They check my Blood presure and it is always high 147 over 124, 134 over 127, this don't make any sense

(ECF No. 2, p. 8 (errors in original).)

> T. Roger push me in my back real hard I stumble over the piece of Iron that they have across the bottom of One door it's about 2 inch high I stumble on it and fell, hitting my elbow on the floor and twisting my ankle to the point that I couldn't move my foot; and my head.

(ECF No. 2, p. 9 (errors in original).)

> Sheriff LeRoy Martin came in to check on my condition I explain to of what was hurting on me I show him my elbow and told him that it make my neck to hurt that I can barely move my head, and I also show him my ankle and where it had started to swell and then he just walk out like it wasn't shit

(ECF No. 2, p. 9 (errors in original).)

> I have not seen any medical attention and the knot on my ankle has not went down, my leg stay swollen all the time, to the point that I sometimes barley can walk this has been going on for or since August 07, 23 and I still have not gotten medical attention from anyone, I'm having problem with my neck, I think that when I fell, I landing on my elbow to the point that I think that I fracture my collarbone to the point that sometimes I barely can get out of Bed to get my food tray.  Sometimes I hurted so bad that my head just be swimming to the point that I be so dizzy that sometimes when I stand up I sometimes past out, I have pass out several times because of this injury I sustain on August 07, 23.

(ECF No. 2, pp. 10-11 (errors in original).)

> I have been complaining about the problem that I'm having, the swellen of my leg, the knot on my ankle that won't go away, the hurting of my collarbone evertime I move, the Dizzy spell I have everytime I get up or rasid my head up to get up from bed, the coloration of my foot, my foot look like it turning purple, it look like that their No blood circulating through my goot, all my veing in my foot looks to dried up, they look black throw my foot, my ankle has this big ass knot on the outside of my foot that's getting bigger and bigger by the day, but its getting to the point that it look like, if you touch it then it will bursted and all of whats in it will just pop out, shitt everywhere, all over everything.

6

(ECF No. 2, p. 11 (errors in original).)

Plaintiff complains in his Complaint about the incident where Officer Rodgers pushed him down occurring on "August 7, 2023." (ECF No. 2.) The video evidence indicates this incident occurred on August 15, 2023. (ECF No. 52.)

Plaintiff claims he suffered an ankle injury, fractured collarbone, a dizzy spell, and chest pains during this incident on August 15, 2023. (ECF No. 2.) Officer Rodgers averred in his affidavit that after this incident on August 15, 2023, Plaintiff was provided with an ice pack for his ankle injury. (ECF No. 54, p. 7.) At some point after the incident, Officer Rodgers observed Plaintiff walking, playing cards, and even running after Officer Rodgers. *Id*.

Plaintiff then claims he passed out one morning and Defendant Seiger placed smelling salt under his nose and performed a sternum rub on his chest but did not call a professional medical provider to treat Plaintiff. (ECF No. 2, p. 8.)

Defendant Seiger stated in her affidavit that inmates at the CCDC must follow the proper procedure to obtain medical treatment. (ECF No. 54, p. 6.) The CCDC Policy and Procedure was not provided by Defendants on the summary judgment record, but Defendant Seiger does state:

> In order for inmates at Columbia County Detention Center to receive medical treatment, they must follow the proper procedure, which requires them to fill out and submit a medical request.

(ECF No. 54, p. 6.) Defendant Seiger also stated that she

> responded to Mr. Gentry's grievances on August 21, 2023, August 31, 2023, and September 9, 2023, informing him that he was incorrect as he had seen the nurse practitioner on several different occasions.

(ECF No. 54, p. 6.)

7

Defendant Seiger also included in her affidavit a block quote as to what occurred on August 15, 2023. This block quote is from a CCDC Inmate Incident List dated November 2, 2023, and according to the original document was written by a nonparty officer Aaliyah Rose. *Id.* The block quote from the original document reads:

| 11/02/2023 17:46    36330 | ROSE, AALIYAH |
|---|---|

On August the 15th at around 13:41 PM . After bringing Pod 2 in front yard call , the majority of Pod 2 was banging the other pod windows, yelling, jumping around, and just being plain ole unruly. I called for control to open pod 2 so the inmates could return to their pod. Upon opening the door a all of the inmates went in except for Jerry Gentry..... I kept telling Gentry to get back in the pod, after telling him multiple times....i came to the conclusion that he needed a little help getting back across the threshold of the door. So I put my hands on both of Gentrys shoulders and gave him a little push to help him back into the the pod. I held both of Genty's shoulders because i knew he would try to fall. I push him just enough so he would step over the metal bar at the bottom of the door and return to the pod, instead Genty slid his right foot up against the metal bar...put his right arm out to break his fall and fell to the floor....Later on during the day Gentry requested an ice pack for his knee he claimed was swollen. Gentry laid in bed for a day or so and was back up walking, sitting at the table playing cards, and i even caught him running to the door to catch me before i got out of sight because he wanted me to make some copies of some legal papers which i told him i could not do.

(ECF No. 42-1, p. 9.) The block quote in Defendant Seiger's affidavit reads:

2.      On August 15, 2023, around 13:41, the following occurred:

On August the 15th at around 13:41 PM . After bringing Pod 2 in front yard call , the majority of Pod 2 was banging the other pod windows, yelling, jumping around, and just being plain ole unruly. I called for control to open pod 2 so the inmates could return to their pod. Upon opening the door a all of the inmates went in except for Jerry Gentry..... I kept telling Gentry to get back in the pod, after telling him multiple times....i came to the conclusion that he needed a little help getting back across the threshold of the door. So I put my hands on both of Gentrys shoulders and gave him a little push to help him back into the the pod. I held both of Genty's shoulders because i knew he would try to fall. I push him just enough so he would step over the metal bar at the bottom of the door and return to the pod, instead Genty slid his right foot up against the metal bar...put his right arm out to break his fall and fell to the floor....Later on during the day Gentry requested an ice pack for his knee he claimed was swollen. Gentry laid in bed for a day or so and was back up walking, sitting at the table playing cards, and i even caught him running to the door to catch me before i got out of sight because he wanted me to make some copies of some legal papers which i told him i could not do.

(ECF No. 54, p. 5.) Defendant Rodgers also includes the exact block quote in his affidavit as his personal knowledge of the events on August 15, 2023. (ECF No. 54, p. 7.)

Plaintiff's Inmate Medical Form from the CCDC indicates that on August 1, 2023, he was previously treated for asthma, heart trouble, diabetes, drug addiction, and alcoholism. (ECF No.

8

54-1, p. 2.)  Although there are no documents titled "Medical Request" on the record, Defendants

attached multiple grievances and requests filed by Plaintiff regarding his medical treatment.  On

August 14, 2023, Plaintiff filed a grievance stating:

> to whom it may concern: i was push in my back real hard by officer T. Roger to the point that i fell to the floor bruiser my shoulder to the point that i can't move my head i also showed SHERIFF LEROY MARTIN my ankle and where it's was swellen up the sheriff turn around and just walk out like everything is alright now im leyind back here that i can't get no attention

(ECF No. 54-2, p. 2 (errors and emphasis in original).)  He added to this message on August 16,

2023:

> now every time i raised my head i get real dizzy this what happen yesterday when officer t roger push me down im 58 years old i can't take that type of abuise officers pushing me from the back i need to talk to my family asap to inform them so they can get some proffesonal help by a doctor this could lead to some serious than what it really is

*Id*. (errors in original).  He received a response from Rebecca Ganaway:

> I have printed this and will pass it on, but you need to put in a medical request and request to speak with Mrs Gean.

*Id*.  Plaintiff then submitted a second message the following day:

> I have wrote several request about a situation that have occure in the jail to the point that a inmate was injury to the point that this inmate was denied medical attention and still to this day the sherriff and jail is still denied him medical attention but condition isn't getting any better it's getting worser it's to the point that when heholdhis head up he is getting real dizzy thats it hard for him to get up and get tray he have to have someone to past it to him because of the knot on his ankle and the dizzy spell that he's always getting

(ECF No. 54-3, p. 2 (errors in original).)  Defendant Seiger responded:

> The gentleman you are referring to has been seen by medical staff and has not been denied medical attention.

*Id*.

On August 22, 2023, Plaintiff submitted a "CID Request" to nonparty Mrs. Eads asking:

What do clear means that I wi see someone about my neck and my ankle which is swollen to the point that my skin is turning color like my skin is not getting any blood to it.

(ECF No. 54-4, p. 2 (errors in original).)  Defendant Seiger reviewed this request and responded that Plaintiff needed to put in a medical request.  *Id.* at 3.

On August 29, 2023, in Plaintiff's Inmate Notes, nonparty Krystel Nelson noted:

On August 28, 2023 around 11:30 Inmate Jerry Gentry stated that he had trouble breathing and his chest hurt. I, Officer Nelson called the doctor to inform him. Dr. Elkins told me to keep an hourly check on Inmate Gentry for any changes. When I left the facility Inmate [Gentry] was fine.  End Report.

(ECF No. 54-5, p. 2).

On August 30, 2023, Plaintiff submitted a Grievance:

YS WHY IS IT SO HARD TO GET MEDICAL ATTENTION IN HERE WHEN YOUR JAILER PUSH ME DOWN FROM BEHIND TO THE POINT THAT I WAS INJURY AND NOW I CAN'T GET ANY MEDICAL ATTENTION THIS INCIDIENTS OCCURE ON THE 07 OF AUGUST 2023 AFTER THE FRIST INCIDENT HAPPEN THAT NO ONE EVERY DID ANYTHING ABOUT IT EITHER AND NOW I HAVE BEEN ATTACT BY INMATE FROM POD 5 THATS NO ONE IS DOING ANYTHING ABOUT IT EITHER WE ARE SUPPOSE TO BE IN A SECURE AND SAFTEY ENVERIOMENT PLACE ARE OUR LIFE WERE IN ALL HANDS AND SOME OF US ENDED UP AT THE HOSPTAIL DO YOU CALL THIS JAIL A SAFTEY AND SECURE PLACE I DON'T.

(ECF No. 54-6, p. 3 (errors in original).)  Defendant Seiger responded the following day: "You have been seen by the nurse who has advised the doctor of your complaints."  *Id*.  On the same day, Plaintiff sent another message:

THIS STORY I HAVE HEARD FROM YOU 5 TO 6 TIMES BUT I HAVE NOT SEEN THIS DOCTOR SINCE THIS INCIDIENT OCCURE ON THE 07 OF AUGUST 2023.

(ECF No. 54-8, p. 2 (errors in original).)   Defendant Seiger responded, "You saw the doctor Sunday." *Id.* Defendant Maness also reviewed this request on September 1, 2023. *Id.*

On September 2, 2023, nonparty Sergeant Stephanie Ingle documented in an Inmate Incident Report:

> At approx. 1930 someone was beating on the door in Pod 1. I, Sgt. Stephanie Ingle went to see what the deal was, and Detainee Antonio Jamerson was at the door. Detainee Jamerson stated that Detainee Gentry was not feeling well.  I brought Detainee Gentry to the booking area and asked him what was wrong.  He said that his chest was hurting.  I took his Blood Pressure it was 137/93 and Pulse read 79.
>
> I also took his Blood Sugar and it was 99.  I had given some Pepto Bismol at around 2000 hrs incase if was indigestion or gas.  He stated that he did not get to eat because one of the male officers gave his tray away because he supposed to have a no bean tray.  I informed him from now on he needed to get up and get his own tray.  I also informed the Officer Chris Wilson and Officer Drillen Owen to call Detainee Gentry's name first to make sure he gets his tray.  I made him a peanut butter sandwich to eat.  Around 2130 he decided to go back to his Pod.  I had him sign a statement saying he felt better to go back to his Pod.

(ECF No. 54-7, p. 2 (errors in original).)

Plaintiff filed another grievance on September 13, 2023:

> I WAS COMPLAIN ABOUT MY CHEST WAS HURTING THAT I COULDN'T BREATHE OFFICERS JOEY TOLD ME THAT HE WAS COMING BACK TO GET ME BUT HE NEVER DID OFFICERS JOEY IS NOT DOING HIS JOB OFFICERS JOEY IS DELECT PEOPLE.

(ECF No. 54-9, p. 2 (errors in original).) Defendant Seiger responded on September 15, 2023:

> You have been seen by the doctor on numerous occasions and we have followed the doctor's orders.

*Id.*

Plaintiff submitted another message on October 11, 2023, stating "SO YOU ALL IS STILL DENIEYING ME MEDICAL ATTENTION."  (ECF No. 54-11, p. 2 (errors in original).)  The following day, Megan Eads responded: "Have you filled out a medical request?" *Id.*

11

Finally, on November 9, 2023, Plaintiff sent a Grievance:

> MY FRIST APPOINTMENT WAS OCTOBER 10, 2023 AND THEN NOVEMBER 07, 2023 AND BOTH OF THEM WAS CANCEL BY YOU MRS. GEAN SEIGER YOU KEEP DENYING ME OF MEDICAL CARE

(ECF No. 54-12, p. 2 (errors in original).) He added to this message on the same day: "WHY COME YOU HAVE NOT GOTTEN MY PAPERS SEND TO A.D.C." *Id*. And he added again on the same day:

> WHY COME YOU DON'T DO NOTHING BUT TELL LIES ,THATS ALL YOU DO IS LIE , YOU ARE A LYING ASS WOMAN YOU REALLY NEED TO BE FIRED AND PUT IN JAIL YOUR SELF IM HAVING REAL SERIOUS MEDICAL ISSUES AND YOU ARENT TAKING THIS MATTER SERIOUS AT ALL I HAVE HAD MY FAMILY TO SET ME DOCTOR APPT THAT YOU HAVE REFUSED ME OF AND ALSO HAD MY FAMILY CALL YOU PERSONALLY AND YOU LIED TO THEM ALSO YOU ARE VERY UNPROFESSIONAL YOU DON'T DESERVE THE POSITION YOU HAVE PLEASE FIND A REPLACEMENT TO BETTER THIS JAIL

*Id*. Defendant Maness reviewed these complaints, and Defendant Seiger then responded on November 13, 2023:

> Mr Gentry I am not going to argue with you. You are ADC. Your medical appointments must go through them.

*Id*.

Finally, Plaintiff did not dispute the accuracy of any of these grievances in his Response to the second Summary Judgment Motion. (ECF No. 64.) Plaintiff did, however, state in his verified Complaint he never received evaluation by a medical professional for his ankle injury, collarbone/shoulder injury, or high blood pressure and dizziness issues. (ECF No. 2, pp. 4-5; 8; 10.)

### III.    LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor."  *Nat'l Bank*, 165 F.3d at 607.  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id*. at 610.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under section 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities.  The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity.  *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted).  "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself."  *Id.*  Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a

13

defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

## IV.    DISCUSSION

Plaintiff claims he suffered an ankle injury, potentially fractured collarbone, "caught a dizzy spell," and experienced chest pains during the incident on August 15, 2023, when Officer Rodgers purportedly shoved Plaintiff to the ground. (ECF No. 2.)[3] Plaintiff also claims he fainted, experienced dizziness and high blood pressure, and could not be roused from his unconsciousness on August 25, 2023. (ECF No. 2, pp. 8-11.)

In the Eighth Circuit, medical care claims are analyzed under the deliberate indifference standard of the Eighth Amendment regardless of Plaintiff's status as a pretrial detainee or convicted inmate. *See e.g., Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (pretrial detainee has same rights to medical care under Due Process Clause as inmate has under Eighth Amendment). To succeed on this type of claim, Plaintiff must demonstrate (1) that he had an objectively serious medical need, and (2) that the Defendant actually knew of, but deliberately disregarded, that serious medical need. *See Ivey v. Audrain Cty., Mo.*, 968 F.3d 845, 848 (8th Cir. 2020).

---

[3] Plaintiff initially claims the incident occurred on August 15, 2023, on page 9 in his Complaint and later claims the incident occurred on August 7, 2023, on page 10 in his Complaint. (ECF No. 2, pp. 9-10.) In Defendants first Motion for Summary Judgment, they submitted the facility video footage of this incident, and it is timestamped August 15, 2023. (ECF No. 42-1, p. 7.)

14

**Objectively Serious Medical Need**

For a Court to find a medical need objectively serious, "a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). The determination of whether the medical need is objectively serious is a factual finding. *Coleman,* 114 F.3d at 784. If there is a factual dispute as to whether the injury or ailment is objectively serious, summary judgment is not appropriate. *See Jones v. Minnesota Dept. of Corrections,* 512 F.3d 478, 482 (8th Cir. 2008).

In their second summary judgment motion, Defendants argue that Plaintiff's ankle injury is not a serious medical need. They do not dispute whether Plaintiff's other claimed injuries or ailments are objectively serious. (ECF No. 55.) Accordingly, the Court will consider only whether Plaintiff's ankle injury was an objectively serious medical need. The Court will assume, for purposes of this opinion, that the other claimed injuries or ailments were objectively serious.

Because there is no indication that a doctor treated Plaintiff's sprained ankle and prescribed a specific course of treatment, the question is whether Plaintiff suffered from a medical need that is so obvious even a lay person would have recognized the need for medical attention. *See Jackson*, 756 F.3d at 1065. This is a factual question, *Coleman,* 114 F.3d at 784, and here the material facts are in dispute.

Plaintiff asserts in his verified Complaint he suffered from a swollen ankle that appeared to have bruising, a knot, low blood flow, and pain. (ECF No. 2, p. 11.) Additionally, in his August 22, 2023 CID Request, Plaintiff states his ankle is "swollen to the point that my skin is turning color like my skin is not getting any blood to it." (ECF No. 54-4, p. 2.) In support of their argument

15

that Plaintiff's ankle injury was not an objectively serious medical need, Defendants rely upon Officer Rodger's affidavit that Plaintiff was provided an ice pack when he injured his ankle, and that at some point after the injury occurred, Officer Rodgers observed Plaintiff walking, playing cards, and even running. (ECF No. 54, p. 7.)

The Eighth Circuit has instructed that the fact finder may consider all the knowledge possessed by Defendants in determining whether an injury is sufficiently obvious.[4]  *See Jones,* 512 F.3d at 482.  At the summary judgment stage, the Court is unable to weigh the evidence or determine the credibility of testimony.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (explaining court must draw all reasonable inferences in favor of nonmoving party and may not make credibility determinations or weigh evidence as those are jury functions).  A jury may believe Plaintiff's testimony over Officer Rodgers' testimony and, without documented medical evaluations or records, it will be solely an issue of witness credibility for the fact finder to determine whether Plaintiff's ankle injury constituted an objectively serious medical need.[5]

---

[4] Certain injuries or ailments including pain or known medical conditions have been determined as sufficiently obvious for a lay person to recognize. *See Pool v. Sebastian County, Ark.,* 418 F.3d 934, 945 (8th Cir. 2005) (known pregnant inmate that was bleeding and passing blood clots would be obvious to lay person); *Hartsfield v. Colburn,* 371 F.3d 454, 457 (8th Cir. 2004) (swollen and bleeding gums with complaints of extreme tooth pain is obvious to lay person); *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999) (serious symptoms from untreated but known diabetes—excessive urination, excessive thirst, migraine headaches, diarrhea, dehydration, sweating, weight loss, excessive hunger, dizziness, diminished vision, loss of sleep, nausea, and fits of raving and delirium—would have been obvious to lay person).

[5] Defendants argue that Plaintiff failed to produce verified medical records to support his claims, however, Defendants did not produce any verified medical records for Plaintiff to refute.  The Eighth Circuit has held "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).  Here, the circumstances are not that of *Dulany*. The only facts Plaintiff must meet are those asserted in Defendant Seiger's affidavit and in the grievances and requests produced.  It is simply Defendant Seiger's word against Plaintiff's on

## Deliberate Disregard

Next the Court considers the subjective prong of the deliberate indifference standard. Under this prong, "[the plaintiff] must show that an official actually knew of but deliberately disregarded his serious medical need." *Jackson*, 756 F.3d at 1065 (internal citation and quotation omitted). "To demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the [detainee's] health." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (internal quotations and citations omitted). The Eighth Circuit has stated that this "onerous standard requires a showing more than negligence, more than even gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal quotations and citations omitted). "A plaintiff can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or inadequate care, showing a defendant's decision to take an easier and less efficacious course of treatment, or showing a defendant intentionally

---

whether he received any medical care. Even in her affidavit, Defendant Seiger does not state that Plaintiff received medical care or that she believed the medical care Plaintiff was provided by the CCDC medical professionals was adequate. Instead, she states that she told him in her responses to his Grievances that he received care. (ECF No. 54, p. 5.) The careful wording of this affidavit is not lost on the Court, and it does not create a requirement for Plaintiff to produce verified medical evidence to refute Defendants' evidence. Furthermore, if Defendants are arguing Plaintiff needs verifying medical evidence to state a cognizable denial claim, the Eighth Circuit has explained verified medical evidence is not the only means of establishing an objectively serious medical need. *Roberson v. Bradshaw,* 198 F.3d 645, 648 (8th Cir. 1999) (explaining that medical need or deprivation alleged must be "either obvious to the layperson *or* supported by medical evidence like a physician diagnosis") (emphasis added). The *Roberson* Court reversed the district court's grant of summary judgment based on the plaintiff's complaints of serious physical conditions resulting from failure to treat diabetes even though the plaintiff did not produce any verifying medical evidence but did produce his own affidavit which conflicted with the defendant's affidavit. *Id.*

delayed or denied access to medical care." *Dantzler v. Baldwin*, 133 F.4th 833, 846 (8th Cir. 2025) (quoting *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015)) (citations omitted).  When determining whether the defendant deliberately disregarded a serious medical need, a court considers the defendant's "actions in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action that would have been apparent to an official in that position." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015).

*Defendant Seiger*

It is undisputed that Defendant Seiger knew of Plaintiff's claimed injuries and alleged ailments.  As enumerated above, the record indicates numerous instances where Plaintiff filed grievances or requests with Defendant Seiger regarding his various health complaints.  It is also undisputed that Defendant Seiger was present when Plaintiff passed out and she performed a sternum rub to assist him.  (ECF No. 2; ECF No. 54, pp. 5-6.)  While such evidence demonstrates Defendant Seiger's awareness of Plaintiff's requests for care, it does not, standing alone, establish she was deliberately indifferent to such needs.

Defendant Seiger argues in her Brief that the medical evidence presented in the summary judgment record demonstrates she was not deliberately indifferent to Plaintiff's objectively serious medical needs because he was provided adequate medical care by medical professionals for such needs.  (ECF No. 55, p. 5.)  However, no such evidence of Plaintiff's receipt of medical care is present in this summary judgment record.  Defendant Seiger declares in her Affidavit that Plaintiff "filed several grievances claiming he was being denied medical care [and she] responded to Mr. Gentry's grievances . . . informing him that he was incorrect as he had seen the nurse practitioner on several different occasions."  (ECF No. 54, p. 6.)  Neither Defendant Seiger's statement nor her

18

responses to Plaintiff's repeated requests for medical care, alone or in combination, prove that Plaintiff received a medical evaluation or medical care by a medical professional.

The absences of any medical records on this summary judgment record leave only for the Court's consideration: (1) Defendant Seiger's carefully-worded affidavit; (2) Plaintiff's verified complaint clearly stating he was completely denied medical care; and (3) the grievances and responses between Plaintiff and Defendant Seiger indicating Plaintiff's statements he was not being seen by medical professionals and Defendant Seiger's responses indicating Plaintiff was being seen by medical professionals.  Given this competing evidence and underdeveloped summary judgment record, the Court finds genuine issues of material fact in dispute regarding whether Defendant Seiger deliberately disregarded Plaintiff's serious medical needs.  Drawing all reasonable inferences in Plaintiff's favor, a reasonable jury could conclude Defendant Seiger was aware of Plaintiff's medical needs yet failed to take meaningful steps to address them.  *Contra Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining plaintiff's disputed facts that are blatantly contradicted by record with video evidence, so that no reasonable jury could believe it, should not be adopted by court on summary judgment to create genuine issue of material fact).

Additionally, while Defendant Seiger argues Plaintiff never filed a proper medical request, the Court does not find such a failure negates Defendant Seiger's knowledge of Plaintiff's medical complaints as she reviewed and responded to his Grievances and requests.[6]

Accordingly, Defendant's Motion for Summary Judgment as to Defendant Seiger in her individual capacity is DENIED.

---

[6] The Defendants have failed to cite the Court to any precedent that establishes that failure to follow jail procedure shall nullify the Defendants' duty to provide adequate medical care under the Eighth Amendment.

*Defendants Martin and Maness*

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 692 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)); s*ee also Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care."). A defendant cannot be liable simply because they are the sheriff or chief deputy of a county.

Plaintiff acknowledged that Defendants Martin and Maness observed his injured ankle and ice was provided initially, but there are no facts to establish Defendant Martin knew Plaintiff continued to suffer effects from the ankle injury. (ECF No. 2.)

The only evidence provided regarding Defendant Martin is a grievance filed by Plaintiff to Defendant Seiger:

> to whom it may concern: i was push in my back real hard by officer T. Roger to the point that i fell to the floor bruiser my shoulder to the point that i can't move my head i also showed SHERIFF LEROY MARTIN my ankle and where it's was

swellen up the sheriff turn around and just walk out like everything is alright now im leyind back here that i can't get no attention.

(ECF No. 54, p. 12 (errors in original).)  Plaintiff filed this grievance on August 16, 2023.

Notably, the record does not reflect any evidence of Defendant Martin's knowledge of Plaintiff's medical complaints or requests or the nature of Plaintiff's other medical conditions. Accordingly, Plaintiff has failed to state a cognizable denial of medical care claim against Defendant Martin, and therefore he is entitled to summary judgment.

Defendant Maness observed Plaintiff's injured ankle and also reviewed at least some of Plaintiff's later grievances and requests related to his other medical complaints and requests. (ECF Nos. 54-2; 54-8; 54-10; 54-12.)  However, just as with Defendant Martin, Plaintiff has failed to allege anything beyond *respondeat superior* liability for Defendant Maness.  Plaintiff failed to allege any personal involvement or responsibility on the part of Defendant Maness in denying Plaintiff medical care.  *See Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care.").

Accordingly, the Court finds, Plaintiff has also failed to state a cognizable claim for denial of medical care against Defendant Maness, and therefore Defendant Maness is entitled to summary judgment.

## Official Capacity Claims

Plaintiff alleges his denial of medical care claim against each Defendant in both their individual and official capacities.  (ECF No. 2.)  As the Court finds Plaintiff's denial of medical care claims against Defendants Martin and Maness fail to state a cognizable constitutional violation, he cannot maintain an official capacity claim against them based on the same facts.  *See*

21

*McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (recognizing that without underlying substantive constitutional violation against defendant in his individual capacity, plaintiff cannot be successful on official capacity claim against that defendant's employer).

Furthermore, Plaintiff has failed to state a cognizable official capacity claim against Defendant Seiger. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claim against Defendant Seiger is treated as a claim against Columbia County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Columbia County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Thus, Plaintiff's official capacity claim against Defendant Seiger is "functionally equivalent" to alleging her employer, Columbia County, had "a policy, custom, or [took an] official action" that deprived him of his constitutional rights. *Veatch*, 627 F.3d at 1257; *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

Plaintiff wholly failed to allege any facts, or argue in response to the second summary judgment motion, that Defendant Seiger's alleged denial of medical care was committed pursuant to an official custom, policy, or practice of Columbia County. Accordingly, Plaintiff's official capacity claims against Defendant Seiger fail as a matter of law.

22

**Qualified Immunity**

Finally, Defendants allege they are entitled to qualified immunity.  Qualified immunity "shields [a] government [official] from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."  *Watson v. Boyd,* 2 F.4th 1106, 1109 (8th Cir. 2021) (internal citation and quotations omitted).  At summary judgment, "the burden remains on the proponent of the immunity to establish the relevant predicate facts, and . . . the nonmoving party is given the benefit of all reasonable inferences."  *Pace v. City of Des Moines,* 201 F.3d 1050, 1056 (8th Cir. 2000).  "In the event that a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground."  *Id.*  But "once the predicate facts have been established, for the purpose of qualified immunity . . . the conduct was either reasonable under settled law in the circumstances [] or it was not . . . and this is a determination of law that should be made at the earliest possible stage in litigation."  *Id.* (internal citations and quotations omitted).

The Court may use its discretion in determining which of these two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a constitutional right was not clearly established at the time of deprivation, then the Court need not determine whether the particular plaintiff's constitutional rights were violated based on the facts before it because the defendant is entitled to qualified immunity regardless.  *See Dimock v. City of Brooklyn,* 124 F.4th 544, 550 (8th Cir. 2024).

23

As determined above, there are genuine issues of material fact regarding whether Plaintiff suffered from objectively serious medical needs and whether Defendant Seiger was deliberately indifferent to those needs. It is Defendant Seiger's burden to establish the predict facts warranting qualified immunity, and when genuine dispute of material facts exist on the record summary judgment on the ground of qualified immunity is inappropriate. *See Pace v. City of Des Moines,* 201 F.3d 1050, 1056 (8th Cir. 2000). Here, as explained in detail above, the summary judgment record is sparse and replete with disputed facts. The competing verified statement as to the severity of Plaintiff's injuries and ailments along with the lack of medical record evidence (or an explanation as to why no such evidence was proffered) renders a determination of qualified immunity upon this record inappropriate.

Accordingly, because there are genuine issues of material fact as to whether Defendant Seiger's conduct violated Plaintiff's clearly established right to adequate medical care for his injured ankle, collarbone symptoms, and dizziness and loss of consciousness, the Court cannot appropriately determine whether Defendant Seiger is entitled to qualified immunity upon the current summary judgement record.

## V.   CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 54) is hereby **GRANTED IN PART AND DENIED IN PART.**

Summary judgment is **GRANTED** as to Plaintiff's claims against Defendants Martin and Maness, in both their individual and official capacities, and those claims are **DISMISSED WITH PREJUDICE.** Defendants Martin and Maness are also dismissed from this action.

Summary judgment is also **GRANTED** as to Plaintiff's official capacity claim for denial of medical care against Defendant Seiger, and that claim is hereby **DISMISSED WITH PREJUDICE**.

Summary judgment is **DENIED** as to Plaintiff's denial of medical care claim against Defendant Seiger in her individual capacity.

**IT IS SO ORDERED** this 20th day of March 2026.

/s/ Spencer G. Singleton

HONORABLE SPENCER G. SINGLETON
UNITED STATES MAGISTRATE JUDGE

25